O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

PATRICIA SALAZAR,                         )     NO. CV 07-8173-MAN
                                          )
                 Plaintiff,               )
                                          )     MEMORANDUM OPINION
        v.                                )
                                          )     AND ORDER
MICHAEL J. ASTRUE,                        )
Commissioner of Social Security,          )
                                          )
                 Defendant.               )
_____ )

        Plaintiff filed a Complaint on December 27, 2007, seeking review of
the denial by the Social Security Commissioner ("Commissioner") of
plaintiff's application for a period of disability ("POD"), disability
insurance benefits ("DIB"), and supplemental security income ("SSI").
On February 7, 2008, the parties consented to proceed before the
undersigned United States Magistrate Judge pursuant to 28 U.S.C. §
636(c).  The parties filed a Joint Stipulation on October 21, 2008, in
which:  plaintiff seeks an order reversing the Commissioner's decision
and awarding benefits or, in the alternative, remanding the matter for
further administrative proceedings; and defendant seeks an order
affirming the Commissioner's decision.  The Court has taken the parties'
Joint Stipulation under submission without oral argument.

### SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On June 24, 2004, plaintiff filed applications for a POD, DIB, and SSI, alleging an inability to work since June 1, 2003, due to obesity and knee problems. (Administrative Record ("A.R.") 31, 53-55, 100-01, 342-44.) Plaintiff has past relevant work experience as a theater manager and sales attendant. (A.R. 87, 92.)

The Commissioner denied plaintiff's application initially (A.R. 31-35) and on reconsideration (A.R. 38-43). On February 21, 2006, plaintiff, who was represented by counsel, testified at a hearing before Administrative Law Judge Barry S. Brown ("ALJ"). (A.R. 354-71.) On July 10, 2006, the ALJ denied plaintiff's claims (A.R. 15-23), and the Appeals Council subsequently denied plaintiff's request for review of the ALJ's decision (A.R. 5-7).

### SUMMARY OF ADMINISTRATIVE DECISION

In his written decision, the ALJ found that plaintiff has not engaged in substantial gainful activity since June 1, 2003, plaintiff's alleged disability onset date, and that plaintiff meets the insured status requirements of the Social Security Act through December 31, 2006. (A.R. 17.) The ALJ determined that plaintiff suffers from "severe" morbid obesity, osteoarthritis, headaches, and sleep apnea, but she does not have any impairment or combination of impairments that meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulations No. 4. (A.R. 17-18.) The ALJ also determined that plaintiff "has some depression, but the evidence does not show that it

2

1  is of any severe degree." (A.R. 17.)

2

3      The ALJ stated that he considered plaintiff's obesity in

4  conjunction with Social Security Ruling 02-01p and Listings 1.01, 3.01,

5  and 4.01 relative to disorders of the musculoskeletal, respiratory, and

6  cardiovascular systems. (A.R. 18, 20.)  The ALJ found that plaintiff's

7  statements concerning the intensity, persistence, and limiting effects

8  of her subjective symptoms are "not entirely credible." (A.R. 18.)

9

10     In setting forth plaintiff's residual functional capacity ("RFC"),

11  the ALJ relied upon the opinion of Joselyn Bailey, M.D., a non-

12  examining, non-testifying medical expert, and found that:

13

14      [Plaintiff] has the residual functional capacity for light

15      work with the ability to lift and carry 25 pounds occasionally

16      and 10 pounds frequently, sit for two hours at a time, stand

17      for one hour at a time, and walk for one hour at a time, for

18      a total of eight hours of sitting, four hours of standing, and

19      four hours of walking during an eight hour workday.

20      [Plaintiff] is able to use her hands for simple repetitive

21      grasping and for pushing and pulling of arm controls, and

22      occasionally for fine manipulation.  She can use her feet for

23      repetitive pushing and pulling of leg controls. [Plaintiff] is

24      unable to squat or crawl, but can occasionally climb stairs

25      and frequently bend or reach.  She is restricted from working

26      at unprotected heights, being around large fast moving

27      machinery and driving automotive equipment.

28

3

(A.R. 18.)


Based on his RFC assessment, the ALJ found that plaintiff is capable of performing her past relevant work as a theater manager or sales attendant. (A.R. 21.) In addition, the ALJ made the alternative finding that, even if plaintiff had a more restrictive RFC for no more than sedentary work, there are jobs that exist in significant numbers in the national economy that plaintiff can perform. (A.R. 21-22.) Accordingly, the ALJ concluded that plaintiff was not under a disability from June 1, 2003, through the date of the ALJ's decision. (A.R. 22.)

**STANDARD OF REVIEW**


Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (citation omitted). The "evidence must be more than a mere scintilla but not necessarily a preponderance." Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003). While inferences from the record can constitute substantial evidence, only those "'reasonably drawn from the record'" will suffice. Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006)(citation omitted).


Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that

4

detracts from the [Commissioner's] conclusion." <u>Desrosiers v. Sec'y of Health and Human Servs.</u>, 846 F.2d 573, 576 (9th Cir. 1988); *see also* <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation.  <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005).  However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." <u>Orn</u>, 495 F.3d at 630; *see also* <u>Connett</u>, 340 F.3d at 874.  The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 885 (9th Cir. 2006)(*quoting* <u>Stout v. Comm'r</u>, 454 F.3d 1050, 1055-56 (9th Cir. 2006)); *see also* <u>Burch</u>, 400 F.3d at 679.

**DISCUSSION**

Plaintiff alleges the following two issues:  (1) whether the ALJ's residual functional capacity assessment is supported by substantial evidence; and (2) whether the ALJ's credibility analysis is supported by substantial evidence.  (Joint Stipulation ("Joint Stip.") at 3.)

**I.**   **The ALJ's RFC Finding Is Not Supported By Substantial Evidence And Should Be Re-Assessed On Remand.**

Plaintiff contends that the ALJ's RFC assessment is not supported by substantial evidence. (Joint Stip. at 15.) Specifically, plaintiff argues that the ALJ erred by: (A) inadequately considering the opinion of plaintiff's treating physician and, instead, relying on the opinion of a non-examining, non-testifying medical expert in determining plaintiff's RFC; and (B) failing to consider properly plaintiff's obesity in formulating the ALJ's RFC assessment. (Joint Stip. at 3-9, 15-16.) For the following reasons, the Court agrees.

**A.**   **The ALJ Improperly Rejected Plaintiff's Treating Physician's Opinion And Relied Upon The Opinion Of The Medical Expert.**

"By rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians," and it is well-settled that "the opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant." Orn, 495 F.3d at 631-32. Generally, a treating physician's opinion is given greater weight, because "'he is employed to cure and has a greater opportunity to know and observe the patient as an individual.'" Magallanes v. Brown, 881 F.2d 747, 751 (9th Cir. 1989)(citation omitted). Where, as here, the treating physician's opinion is contradicted by other medical evidence in the record, an ALJ may not reject it without providing specific and legitimate reasons for doing so which are supported by substantial evidence in the record. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).

If there is "substantial evidence" in the record that contradicts the opinion of a treating physician, such as an examining physician's opinion supported by independent clinical findings, the opinion of the treating physician is no longer entitled to controlling weight.  Orn, 495 F.3d at 632.  However, a finding that the treating physician's opinion "is not entitled to controlling weight does not mean that the opinion is rejected."  Social Security Ruling 96-29 at 1 ("In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.").  In this instance, the Social Security regulations still require deference to the treating physician's opinion, but the weight accorded to it is governed by the factors listed in the regulations, such as length, nature, and extent of the treatment relationship, frequency of examination, and supportability.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); Orn, 495 F.3d at 632-33.

In the instant case, the ALJ rejected the opinion of plaintiff's treating physician, Tenzing Wangyal, M.D., in favor of the opinion of the non-examining, non-testifying medical expert, Joselyn Bailey, M.D. (A.R. 21.)

Dr. Wangyal, an internal medicine physician of the Talbert Medical Group, where plaintiff has regularly treated since March 2003, completed a Physical Residual Functional Capacity Questionnaire, in which he diagnosed plaintiff with, *inter alia*:  (1) headaches - good prognosis; (2) morbid obesity - poor prognosis; and (3) back pain, chronic - poor prognosis due to weight.  (A.R. 252.)  Dr. Wangyal opined that plaintiff:  has bilateral pain in her lumbar and cervical spine and in

7

her feet, which is precipitated by fatigue, stress, and movement; has impaired sleep affected by somatoform disorder; has emotional factors that contribute to the severity of her symptoms and limitations; often experiences symptoms severe enough to interfere with attention and concentration and has a slight limitation in the ability to deal with work stress; is not a malingerer; has impairments reasonably consistent with her symptoms and functional limitations; can sit for at least six hours in an eight hour work day, but can stand or walk for less than two hours in an eight hour work day; is able to continuously sit for more than two hours, but can stand only 15 minutes at a time; must get up and walk around for five minutes, every 60 minutes; does not need a job which permits shifting positions at will from sitting, standing, or walking, but will sometimes need to take unscheduled five minute breaks, at least once per shift, during an eight hour work day; if possible, should elevate her legs with prolonged sitting, but elevation is not necessary; can occasionally lift 10 pounds and frequently lift less than 10 pounds; has no significant limitations in doing repetitive reaching, handling or fingering; can bend only 10 percent of the time during an eight hour work day, and can never twist at the waist as both functions are "very difficult with her weight"; and should avoid concentrated exposure to extreme cold, extreme heat, high humidity, chemicals, solvents/cleaners, soldering fluxes, cigarette smoke, perfumes, fumes, odors, dusts, and gases. (A.R. 255-57.)  In addition, Dr. Wangyal opined that plaintiff's impairments are likely to cause her to experience "good days" and "bad days," and plaintiff will likely be absent from work as a result of her impairments or treatment about three times a month. (A.R. 257.)  Finally, when asked to describe any other limitations (such as psychological limitations, limited vision,

8

difficulty hearing, etc.) that would affect plaintiff's ability to work at a regular job on a sustained basis, Dr. Wangyal opined that "when she has come in, she has had a chronic low level flat affect/depressive appearance/ I suspect this will be a limiting factor to her success in her work." (A.R. 258.)

By contrast, the non-examining, non-testifying medical expert, Dr. Bailey, submitted a one-page response to an interrogatory sent to her by the ALJ post-hearing, dated April 13, 2006, in which Dr. Bailey stated that plaintiff "has the following medical diagnoses: 1. Sleep Apnea - 7/1/04 (3F/1) [and] 2. Morbid Obesity - 12/10/03 (8F/24) for ten years with Chronic Pain Syndrome (2F/17), (5F/1) and Headaches." (A.R. 340.) Dr. Bailey explained that "[a]t [plaintiff's] young age of about 30 years old, her physical problems are related to being overweight. At this time she does not meet nor equal any of the Listings." (*Id.*) Dr. Bailey also submitted a one-page Physical Capacities Evaluation, dated April 13, 2006, in which she opined that plaintiff retains the residual functional capacity for generally light work, except for restrictions on squatting, crawling, working at unprotected heights, being around moving machinery, and driving automotive equipment. (A.R. 341.) Dr. Bailey further opined that plaintiff can occasionally crawl, use her hands for fine manipulation, climb stairs, and frequently bend and reach. (*Id.*)

In discussing, and subsequently rejecting, Dr. Wangyal's opinion, the ALJ simply stated that, "[t]he record contains an assessment submitted by [plaintiff's] physician, Dr. Tenzing Wangyal[,] under Exhibit 10F[,] which reflects the capacity for generally sedentary work. Other restrictions noted with respect to [plaintiff's] symptomatology

9

1  being severe enough to often interfere with attention and concentration

2  and causing her to be absent from work three times a month is excessive

3  and found to be without any objective basis." (A.R. 21.)

4

5      The ALJ's stated reason for rejecting plaintiff's treating

6  physician's opinion falls short of the "specific, legitimate" standard

7  contemplated by Ninth Circuit precedent, because the ALJ "must do more

8  than offer his conclusions"; instead, he must "explain why" and "give

9  reasons for rejecting" Dr. Wangyal's opinion regarding plaintiff's

10 residual functional capacity. Embrey, 849 F.2d at 421-22. Moreover,

11 when examined in the light of plaintiff's treatment record from March

12 2003, through January 2006, Dr. Wangyal's opinion is consistent with the

13 objective medical record as a whole. Indeed, plaintiff's medical

14 records clearly document her morbid obesity, edema, osteoarthritis,

15 headaches, back and neck pain, shortness of breath, sleep apnea,

16 fatigue, "flat affect," and "depressive appearance."[1] (A.R. 178-79, 185-

17

_____

18 [1]  The ALJ found that plaintiff has "some depression" but that it is
   not "severe," because she has not "maintained any ongoing care for a
19 mental impairment except for a brief period of treatment with a
   psychologist." (A.R. 17.) However, Carol Cole, Psy.D, the psychologist
20 with whom plaintiff treated from July 2003, through April 2004, opined
   in a July 10, 2004 letter to the Department of Social Services that
21 plaintiff's "sustained concentration is limited," she "would have
   problems in adaptation," and her "ability to persist in accomplishing a
22 task would be severely limited." (A.R. 156.) Moreover, and critically,
   at the hearing, plaintiff testified that she participated in
23 psychological treatment for a approximately five months but was forced
   to abandon treatment because she "had no money to pay" her therapist."
24 (A.R. 368.)

25      The Ninth Circuit has "proscribed the rejection of a claimant's
   complaints for lack of treatment when the record establishes that the
26 claimant could not afford it." Regennitter v. Comm'r of Soc. Sec.
   Admin., 166 F.3d 1294, 1297 (9th Cir. 1999); see also Smolen v. Chater,
27 80 F.3d 1273, 1284 (9th Cir. 1996); Gamble v. Chater, 68 F.3d 319, 322
   (9th Cir. 1995)("[a]lthough progress has been made in providing
28 affordable medical care to the needy . . . many Americans are without

10

86, 200, 203, 210, 212, 214-15, 217, 258, 264-65.)  When viewed in its entirety, the record provides ample support for the opinion of Dr. Wangyal, and the ALJ erred in rejecting his opinion without setting forth the requisite specific and legitimate reasons based upon substantial evidence for doing so.  Accordingly, remand is required to allow the ALJ the opportunity to remedy this error.

Furthermore, not only did the ALJ improperly reject the opinion of Dr. Wangyal, but also, in assessing plaintiff's RFC, the ALJ relied on the opinion of Dr. Bailey, the medical expert, whose opinion itself would not constitute substantial evidence if she failed to review all relevant medical records regarding plaintiff. (A.R. 21.)  *Cf.* Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999)("[o]pinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it."); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a) (RFC is an assessment based upon all of the

---

the means or opportunity to obtain necessary medical care.  Social Security disability and SSI benefits exist to give financial assistance to disabled persons because they are without the ability to sustain themselves.  It flies in the face of the patent purposes of the Social Security Act to deny benefits to someone because he is too poor to obtain medical treatment that may help him.")(citations omitted).

On remand, the ALJ should consider the impact of all of plaintiff's impairments, including plaintiff's depression, whether severe or not, on her ability to engage in and sustain full-time work.  *See* 20 C.F.R. §§ 404.1545(e), 416.945(e) ("we will consider the limiting effects of all your impairment(s), even those that are not severe, in determining your residual functional capacity"); *see also* Smolen, 80 F.3d at 1290 ("the ALJ must consider the combined effect of all of the claimant's impairments on [his] ability to function, without regard to whether each alone was sufficiently severe."); Erickson v. Shalala, 9 F.3d 813 (9th Cir. 1993)("The ALJ must consider *all factors* that might have a 'significant impact on an individual's ability to work'.")(emphasis in original).

11

relevant evidence).  Dr. Bailey did not testify at the hearing, but set forth her opinion regarding plaintiff's impairments in a one-page, cursory response to an interrogatory sent to her post-hearing by the ALJ, and a one-page Physical Capacities Evaluation form.  (A.R. 340-41.) As Dr. Bailey did not testify at the hearing, plaintiff's counsel was not afforded the opportunity to cross-examine her regarding what records she reviewed in forming her opinion or with respect to the soundness of her opinion.[2]  It is unclear whether Dr. Bailey actually reviewed plaintiff's medical records in their entirety in formulating her opinion, given that Dr. Bailey cites only four exhibits in support of her diagnoses.[3]  (A.R. 340.)  The most troubling aspect of Dr. Bailey's assessment is her reliance on a stale December 2003 treatment note from Talbert Medical Group that she used to support her diagnosis of plaintiff's morbid obesity.  (A.R. 200, 340.)  This December 2003

---

[2]    In a letter to the ALJ dated May 25, 2006, plaintiff's counsel commented on Dr. Bailey's response and specifically requested an opportunity to cross examine Dr. Bailey at a supplemental hearing. (A.R. 116.)  However, the ALJ ignored plaintiff's counsel's request to cross-examine Dr. Bailey and adopted Dr. Bailey's opinion with respect to plaintiff's RFC as his own.  See Solis v. Schweiker, 719 F.2d 301, 302 (9th Cir. 1983)("A claimant in a disability hearing is not entitled to unlimited cross-examination, but rather 'such cross-examination as may be required for a full and true disclosure of the facts.' 5 U.S.C. § 556(d).").  On remand, the ALJ should, at the very least, address plaintiff's counsel's request for cross-examination and, if the ALJ determines the request should be denied, the ALJ should state his reasons for denying plaintiff's counsel the opportunity to cross-examine Dr. Bailey.

[3]    In support of her diagnosis of sleep apnea, Dr. Bailey cites a July 2004 sleep study report by S.K. Mostafavi, M.D., F.C.C.P. from Advanced Sleep Medicine Services, Inc. (A.R. 152); in support of her diagnosis of morbid obesity, Dr. Bailey cites a December 2003 treatment note from Talbert Medical Group that reveals no particular weight for plaintiff, only that she was "over scale" weight (A.R. 200); in support of her diagnosis of chronic pain symdrome, Dr. Bailey cites a June 2004 pulmonary consultation report by Ramesh R. Patel, M.D., F.C.C.P., and an August 2004 follow-up clinic note by Babak Kasravi, M.D., from Los Angeles Cardiology Associates (A.R. 150, 157).

treatment note failed to document any particular weight for plaintiff, mentioning only that plaintiff's weight was "over scale," *i.e.*, more than 350 pounds. (A.R. 200.)   In February 2006, however, plaintiff testified at the hearing that her weight had increased to 490 pounds, *i.e.*, a possible weight increase of 139 pounds over the weight reflected on the December 2003 treatment note. (A.R. 357.)   Given the brevity of Dr. Bailey's interrogatory response, it is unclear whether Dr. Bailey was aware of plaintiff's significant weight increase to 490 pounds as of the date of the hearing in February 2006 -- a critical fact that must be, and should have been, considered in formulating plaintiff's RFC.

Accordingly, remand is required for proper consideration of the physicians' opinions in accordance with the governing legal standards, and for re-assessment of plaintiff's RFC.

**B.   <u>The ALJ Failed To Assess Plaintiff's Obesity Properly In Formulating His RFC Assessment</u>.**

Social Security Ruling ("SSR") 02-1p provides that the Administration should consider "the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment. . . .   The combined effects of obesity with other impairments may be greater than might be expected without obesity. . . . [W]e will explain how we reached our conclusions on whether obesity caused any physical or mental limitations."

While obesity itself is not a "disabling" impairment, Listings 1.00Q, 3.00I, and 4.00F describe muscular, respiratory, and

13

cardiovascular problems that can result in limitations arising from obesity.  Applicable regulations provide that:[4]

> Obesity is a medically determinable impairment that is often associated with disturbance of the [musculoskeletal, respiratory, and cardiovascular] system, and disturbance of this system can be a major cause of disability in individuals with obesity.  The combined effects of obesity with [musculoskeletal, respiratory, and cardiovascular] impairments can be greater than the effects of each of the impairments considered separately.  Therefore, when determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity, adjudicators must consider any additional and cumulative effects of obesity.

20 C.F.R. Pt. 404, Subpt. P, Appx. I, § 1.00Q, 3.00I, and 4.00F.

In addition to the Commissioner's regulations, SSR 02-01p recognizes obesity as a "medically-determinable impairment" and states that administrative law judges should consider the combined effects of obesity with other impairments under the Listing of Impairments when

---

[4]    Listing 1.00Q addresses musculoskeletal impairments; Listing 3.00I addresses respiratory impairments; and Listing 4.00F addresses cardiovascular impairments.

assessing a claimant's RFC.[5]   SSR 02-01p, adopting the National Institutes of Health's (NIH) classification and diagnosis of obesity according to Body Mass Index (BMI), considers anyone with a BMI over 30 to be "obese."   The Clinical Guidelines recognize three levels of obesity.  Level 1 includes BMIs of 30.0-34.9.  Level II includes BMIs of 35.0-39.9.  Level III, termed "extreme" obesity and representing the greatest risk for developing obesity-related impairments, includes BMIs greater than or equal to 40.  Soc. Sec. R. 02-01p.

In the present case, the ALJ failed to discharge the Administration's responsibilities under SSR 02-1p. The medical evidence conclusively establishes that plaintiff suffers from "extreme" obesity, also termed "morbid obesity," a finding that is well-documented by the record and uncontested by the Commissioner.[6]  At the hearing, plaintiff testified that she weighs 490 pounds and is approximately 5'8" tall. (A.R. 357.)  Using plaintiff's weight of 490 pounds and height of 5'8", plaintiff's BMI is 74.5.[7]   Although the BMI levels are flexible guidelines and "do not correlate with any specific degree of functional loss," plaintiff's resulting BMI calculation suggests that her extreme obesity likely has a profound impact on her ability to perform work

---

[5]    Social Security Ruling 02-01p superseded Social Security Ruling 00-3p, although it did not alter Social Security Ruling 00-3p in any substantive part.  20 C.F.R. Pt. 404, Subpt. P, Appx. I, § 1.00Q, 3.00I, and 4.00F.

[6]    The ALJ found that plaintiff suffers from "severe" morbid obesity, along with "severe" osteoarthritis, headaches, and sleep apnea.  (A.R. 17.)

[7]    Plaintiff's BMI was calculated by using the BMI calculator found at the Centers for Disease Control and Prevention website <http://www.cdc.gov/healthyweight/assessing/bmi/>.

activities and presents a significant issue that the ALJ should have carefully explored in greater detail in assessing her RFC.  SSR 02-01p.

In assessing plaintiff's RFC, the ALJ concluded, in reliance on the medical expert's opinion, that plaintiff is capable of engaging in light work and retains the capacity to walk for four hours and stand for four hours daily.  (A.R.  18, 21.)  Without the benefit of cross-examination of Dr. Bailey or a detailed analysis by the ALJ of the impact of plaintiff's morbid obesity on her ability to perform work activities, it is difficult to accept the conclusion that plaintiff, who weighs nearly 500 pounds, suffers from severe osteoarthritis and significant pain in her neck, back, and knees, and suffers from medically documented edema in her lower extremities, is capable of walking for four hours a day and standing for four hours a day on a regular and continuing basis.  *See* Barrett v. Barnhart, 355 F.3d 1065, 1068 (7th Cir. 2004)(stating that "many people who are not grossly obese and do not have arthritic knees find it distinctly uncomfortable to stand for two hours at a time.  To suppose that [the plaintiff] could do so day after day on a factory floor borders on the fantastic.").

The ALJ is required to do more than simply state that he "considered" the effects of plaintiff's morbid obesity on her other impairments; rather, the ALJ must "explain how [he] reached [his] conclusions," and his failure to do so constitutes error.  Accordingly, remand is appropriate to allow the ALJ to re-assess his RFC finding, paying particular attention to the significant impact plaintiff's extreme obesity may have on her other impairments and on her ability to perform work activities on a competitive and sustained basis.

**II.   The ALJ Failed To Provide The Requisite Clear And Convincing Reasons For Rejecting Plaintiff's Subjective Pain Testimony.**

Plaintiff alleges that the ALJ erred in his consideration of plaintiff's subjective symptom testimony.  (Joint Stip. at 16-18, 21.) For the reasons set forth below, the Court agrees.

Once a disability claimant produces objective evidence of an underlying physical impairment that is reasonably likely to be the source of her subjective symptom(s), all subjective testimony as to the severity of the symptoms must be considered.  Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 2001)(*en banc*); *see also* 20 C.F.R. § 416.929(a)(explaining how pain and other symptoms are evaluated).   "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each." Robbins, 466 F.3d at 883.   Further, an ALJ may not rely solely on the absence of objective medical evidence supporting the *degree* of pain alleged as a basis for finding that a plaintiff's testimony regarding subjective symptoms is not credible.  Fair v. Bowen, 885 F.2d 597, 601-02 (9th Cir. 1989); Stewart v. Sullivan, 881 F.2d 740, 743-44 (9th Cir. 1989).

Both in her filings with the Commissioner and in her testimony, plaintiff described various subjective symptoms from which she claims to suffer.   At the hearing, plaintiff testified that prior to her "difficulties," she weighed 300 pounds, but that her weight had

increased to 490 pounds as of February 2006. (A.R. 357.) Plaintiff stated that she intends to undergo gastric bypass surgery as soon as the surgery is approved, because she is "320 pounds over weight and surgery will save [her] life." (A.R. 90.) Plaintiff further stated that she "can't wipe [her] own feces, can't shower [her]self, can't stand on [her] feet or legs longer than a minute, [has] shortness of breath, [and has] constant headaches." (A.R. 79.) Plaintiff stated that she "can't do much of anything [because she is] becoming immobile," is tired "all the time," and "can't care for [her]self the way normal people do." (A.R. 80, 83.) Plaintiff complained of "a lot of pain" in her back and legs, including her feet, ankles, and toes, and right arm. (A.R. 90, 360-61.) Plaintiff stated that she "can barely move and walk around" and spends approximately nine hours lying down during the day. (A.R. 100, 368.) Plaintiff also testified that she gets headaches every day, has kidney stones, and suffers from shortness of breath. (A.R. 362.) Plaintiff further testified that she has sleep apnea, which causes her to stop breathing in the middle of the night and is treated with a breathing machine, but she cannot afford the machine. (A.R. 363.) Plaintiff stated that she feels depressed most of the time, has difficulty concentrating, cannot take care of her personal hygiene and grooming, and no longer socializes as she did in the past. (A.R. 363-64.) Plaintiff further testified that she suffers from diarrhea, dizziness, stomach pain, and slurring words as a result of the prescription medication she takes to relieve her pain. (A.R. 365.) Plaintiff also testified that she has not been able to drive a car for the past three years, because her right foot is "extremely swollen" and falls asleep. (A.R. 366.) Plaintiff testified that she does not perform housework, does not participate in any recreational activities,

18

requires assistance dressing herself, and cannot go shopping by herself. (A.R. 367.)  Plaintiff further testified that she has treated with a psychologist in the past, but she was forced to stop her treatment because she "had no money to pay" the psychologist.  (A.R. 368.)

In his written decision, the ALJ found that plaintiff suffers from "severe" morbid obesity, osteoarthritis, headaches, and sleep apnea, all of which are medically determinable impairments that reasonably could cause the subjective pain and attendant limitations about which plaintiff complains.  (A.R. 17.)  However, the ALJ rejected plaintiff's statements concerning the "intensity, persistence and limiting effects" of her limitations, setting forth the following reasons for doing so: (1) plaintiff's "symptoms in combination are managed conservatively, primarily with medications" and plaintiff is "not described as a surgical candidate relative to her complaints, nor has she required a series of hospitalizations, participation in physical therapy or a pain clinic, or other aggressive treatment commonly utilized for chronic and debilitating pain"; (2) her symptoms related to sleep apnea appear to be amenable to treatment with use of a CPAP; (3) plaintiff's subjective complaints are inconsistent with the assessment made by her treating physician; and (4) the objective medical evidence does not support plaintiff's claims of disabling limitations to the degree alleged. (A.R. 20.)  When examined in the light of the record as a whole, these reasons do not withstand scrutiny.

The ALJ's rejection of plaintiff's subjective complaints based, in part, on the fact that plaintiff's symptoms are "managed conservatively, primarily with medications," that plaintiff has not been described as a

19

1   "surgical candidate relative to her complaints," and that plaintiff has

2   not required "other aggressive treatment," are not convincing reasons to

3   reject plaintiff's credibility.  The ALJ's conclusion that plaintiff's

4   symptoms are "managed" with medication is not a proper reason to reject

5   her credibility, because the majority of plaintiff's subjective

6   complaints, namely her swollen lower extremities, inability to care for

7   her personal hygiene, shortness of breath, and virtual immobility, are

8   directly related to her morbid obesity and persist with or without pain

9   medication.  Moreover, there is no substantial evidence in the record to

10  support the ALJ's inference that plaintiff's debilitating pain and

11  symptoms would be alleviated if she were to secure more aggressive

12  treatment.   While it is permissible for an ALJ to evaluate the

13  credibility of allegations of pain based, in part, on plaintiff's record

14  of receiving minimal and conservative treatment, he must make detailed

15  findings of fact so that a reviewing court may determine whether

16  substantial evidence supports the ALJ's conclusion.  The ALJ failed to

17  meet his burden here.  *See*  <u>Fair</u>, 885 F.2d at 601-02; <u>Lewin v.</u>

18  <u>Schwieker</u>, 654 F.2d 631, 634-635 (9th Cir. 1981).

19

20      A second reason cited by the ALJ for rejecting plaintiff's

21  subjective symptom testimony -- that plaintiff's symptoms related to

22  sleep apnea appear to be amenable to treatment with use of a CPAP -- is

23  not a convincing basis upon which to reject plaintiff's testimony.

24  While the ALJ's statement appears to be true to the extent that the

25  medical evidence demonstrates that with the use of CPAP titration

26  plaintiff's sleep apnea may be treatable (A.R. 152-54), plaintiff

27  testified that she is unable to afford such a CPAP machine. (A.R. 363.)

28  While an unexplained failure to seek treatment may cast doubt on a

                                    20

claimant's credibility, such an inference is unreasonable where plaintiff is indigent. *See* <u>Fair</u>, 885 F.2d at 602. Indeed, the Ninth Circuit has "proscribed the rejection of a claimant's complaints for lack of treatment when the record establishes that the claimant could not afford it." <u>Regennitter</u>, 166 F.3d at 1297; *see also* <u>Smolen</u>, 80 F.3d at 1284; <u>Gamble</u>, 68 F.3d 319 at 322. Accordingly, this reason for rejecting plaintiff's subjective complaints also is not convincing.

The ALJ also rejected plaintiff's subjective pain testimony because, in his view, the objective evidence did not support plaintiff's claims of disabling limitations to the degree alleged. It is well-settled that an ALJ may not discredit a claimant's subjective claims of disabling pain for the sole reason that the alleged degree of pain is not fully supported by objective medical evidence. *See* <u>Fair</u>, 885 F.2d at 601-02; <u>Stewart</u>, 881 F.2d at 743-44. Indeed, in <u>Cotton v. Bowen</u>, 799 F.2d 1403, 1407 (9th Cir. 1986), the Ninth Circuit stated explicitly that excess pain, by definition, is "pain that is not supported by objective medical findings." Thus, the ALJ erred by requiring plaintiff to adduce medical evidence sufficient to corroborate the severity of her alleged pain and other symptoms. *See* <u>Bunnell</u>, 947 F.2d at 346.

Accordingly, the ALJ's rejection of plaintiff's credibility, without setting forth clear and convincing reasons for the rejection, constitutes reversible error.[8] On remand, the ALJ must provide reasons,

---

[8] Another reason stated by the ALJ for rejecting plaintiff's credibility was that plaintiff's subjective complaints were inconsistent with the her treating physician's assessment. (A.R. 20.) While this assertion is not entirely incorrect, this reason alone is not sufficient to reject plaintiff's credibility.

if they exist and in accordance with the requisite legal standards, for discrediting plaintiff's pain testimony.

III. **Remand Is Required**.

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000).   Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Id.* at 1179 ("the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings").   However, where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Id.*  Here, remand is the appropriate remedy to allow the ALJ the opportunity to remedy the above-mentioned deficiencies and errors. *See, e.g.,* Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004)(remand for further proceedings is appropriate if enhancement of the record would be useful); McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989)(remand appropriate to remedy defects in the record).

Plaintiff contends, and the Court agrees that, because plaintiff has non-exertional limitations, it was improper for the ALJ to rely on the Medical-Vocational Guidelines (the "Grids") without seeking testimony from a vocational expert to make the alternative finding that,

22

even if plaintiff is incapable of performing light work, she is capable of performing sedentary jobs that exist in significant numbers in the national economy that plaintiff can perform.  (A.R. 21-22.)  When a claimant suffers only from exertional limitations, but not non-exertional limitations, the ALJ may apply the Grids, at step five, to match the claimant with appropriate work.  Holohan v. Apfel, 246 F.3d 1195, 1208 (9th Cir. 2000); Reddick v. Chater, 157 F.3d 715, 729 (9th Cir. 1998); Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988).  However, an ALJ "may apply the grids in lieu of taking testimony of a vocational expert only when the grids accurately and completely describe the claimant's abilities and limitations" and not in cases where the Grids do not accurately account for a claimant's limitations.  Reddick, 157 F.3d at 729 (emphasis added); *see also* Holohan, 246 F.3d at 1208 (as the Grids "are based only on strength factors," they are sufficient to meet the Commissioner's burden at step five "only when a claimant suffers only from exertional limitations").  Accordingly, the ALJ erred by failing to seek testimony from a vocational expert and further proceedings are required.  *See* Reddick, 157 F.3d at 729 (because the claimant had non-exertional limitations, it was error not to seek the testimony of a vocational expert).

## CONCLUSION

Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve

copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: August 17, 2009

_Margaret A. Nagle_
_____
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE

24